## LIPKE *v.* LEDERER, COLLECTOR OF INTERNAL REVENUE FOR THE FIRST DISTRICT OF PENNSYLVANIA.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

No. 596.   Argued March 21, 22, 1922.—Decided June 5, 1922.

1. In a suit to restrain revenue officers from seizure of property under color of an act of Congress, a substantial claim that the act, as construed and sought to be applied by them, is unconstitutional, will support a direct writ of error from this court to the District Court.   P. 560.

2. The so-called taxes retained in force and imposed by § 35 of the National Prohibition Act upon dealing in liquor prohibited and made criminal by the act, are in reality a penalty, and cannot be enforced by distraint of the offender's property without first affording him a due opportunity for a constitutional hearing. P. 561.

3. Revised Statutes, § 3224, forbidding suits to restrain assessment or collection of any tax, and the statutory remedy of payment and action to recover, are inapplicable to such a case; and the person affected is entitled to relief by injunction, for want of an adequate legal remedy.   P. 562.

274 Fed. 493, reversed.

APPEAL from a decree of the District Court dismissing a bill to restrain the collection by distress, sale or otherwise, of amounts assessed as taxes and penalties under the National Prohibition Act.

*Mr. Lincoln L. Eyre,* with whom *Mr. Francis J. Maneely* and *Mr. Otto A. Schlobohm* were on the brief, for appellant.

*Mrs. Mabel Walker Willebrandt,* Assistant Attorney General, with whom *Mr. Solicitor General Beck* and *Mr. Harvey B. Cox* were on the brief, for appellee.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Relying upon *Ketterer* v. *Lederer*, 269 Fed. 153, the court below dismissed the bill, upon motion, for want of equity, 274 Fed. 493, and the cause is here by direct appeal.

The bill alleges:

That complainant Lipke paid all internal revenue taxes required by the laws of the United States for the year ending June 30, 1920; and he holds a retail liquor license issued by the Court of Quarter Sessions, County of Philadelphia, for the year ending May 31, 1921. On December 29, 1920, he was arrested for selling liquor contrary to the National Prohibition Act and gave bail to appear and answer in the United States District Court. This prosecution is still pending.

That on March 18, 1921, complainant received a written communication from the defendant which stated: " Notice is hereby given that there has been assessed against you the amount of tax stated on this notice. Demand is hereby made for the immediate payment of said tax. If payment is not made within 10 days after date of this notice, a penalty of 5 per cent. of the amount of tax due will be added, plus interest at the rate of 1 per cent. per month until paid." The total assessment amounted to $557.29, made up of three items indicated thus—" R. L. D. Sec. 35 D. T. 45.83; 11 Mos. 21 3244 P. 11.46; S. F. P. A. 1–26–21 S. P. 500.00."

That on March 31st he received a second written demand for $557.29 with penalty of 5 per cent. for failure to pay within prescribed time. And he was advised " If payment of tax and penalty is not received within 10 days, collection of the same, with any accrued interests thereon and costs, shall be made by seizure and sale of property."

That " In addition to the notice printed on said so-called tax bills, that the property of your orator will be

seized and sold for non-payment, your orator has been informed by officials of the defendant department that after the expiration of ten days from the rendition of said second notices, his property will be seized and sold by warrant of distress. . . . He is now subject, at any moment to have the defendant, as Collector of Internal Revenue, seize his property, real or personal, for the non-payment of said fines and penalties and that he is wholly without adequate remedy at law to prevent such seizure of his property."

That §. 3244 Rev. Stats.,[1] has no application; § 35 of the Prohibition Act confers no such power as the Collector seeks to exercise; and he is undertaking to punish complainant by fine and penalty for an alleged criminal offense without hearing, information, indictment or trial by jury, contrary to the Federal Constitution. If the latter section has the meaning ascribed to it by the defendant, it is unconstitutional.

The prayer is for an injunction restraining the defendant from proceeding to collect the sum demanded by warrant of seizure, distress or sale or otherwise, and requiring a cancellation of the so-called "tax bills."

Appellant maintains that the demand upon him was not for taxes, but for a penalty for an alleged criminal act; that the method adopted for enforcing this penalty is contrary to the Federal Constitution; and that if construed as appellee insists it should be, § 35 is unconstitutional.

Appellee maintains that the cause involves only questions of construction and, therefore, the appeal should be

---

[1] Sec. 3244. Special taxes are imposed as follows:

  *        *        *        *        *

Fourth. Retail dealers in liquors shall pay twenty-five dollars. Every person who sells, or offers for sale foreign or domestic distilled spirits or wines, in less quantities than five wine gallons at the same time, shall be regarded as a retail dealer in liquors.

dismissed; that § 3224, Rev. Stats.,[1] prohibits the relief prayed; that the bill states no ground for equitable relief; and that full, adequate and complete remedy may be had at law.

The cause is properly here by direct appeal from the District Court. Appellant claimed that as construed and sought to be enforced by the Collector, § 35 of the Prohibition Act conflicts with the Federal Constitution. The point is substantial and sufficient to support our jurisdiction. *Towne* v. *Eisner*, 245 U. S. 418, 425; *Dahnke-Walker Milling Co.* v. *Bondurant*, 257 U. S. 282; *South Covington & Cincinnati Street Ry. Co.* v. *Newport ante*, 97.

The National Prohibition Act, c. 85, 41 Stat. 305, is entitled "An Act To prohibit intoxicating beverages, and to regulate the manufacture, production, use, and sale of high-proof spirits for other than beverage purposes, and to insure an ample supply of alcohol and promote its use in scientific research and in the development of fuel, dye, and other lawful industries." "It is a comprehensive statute intended to prevent the manufacture and sale of intoxicating liquors for beverage purposes." *United States* v. *Yuginovich*, 256 U. S. 450. "Title II—Prohibition of Intoxicating Beverages"—contains thirty-nine sections.

"Sec. 3. No person shall on or after the date when the eighteenth amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this Act, and all the provisions of this Act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented.

\*           \*           \*           \*           \*

[1] Sec. 3224. No suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court.

" Sec. 29. Any person who manufactures or sells liquor in violation of this title shall for a first offense be fined not more than $1,000, or imprisoned not exceeding six months, and for a second or subsequent offense shall be. fined not less than $200 nor more than $2,000 and be imprisoned not less than one month nor more than five years.

\*        \*        \*        \*        \*

" Sec. 35. All provisions of law that are inconsistent with this Act are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws. This Act shall not relieve anyone from paying any taxes or other charges imposed upon the manufacture or traffic in such liquor. No liquor revenue stamps or tax receipts for any illegal manufacture or sale shall be issued in advance, but upon evidence of such illegal manufacture or sale a tax shall be assessed against, and collected from, the person responsible for such illegal manufacture or sale in double the amount now provided by law, with an additional penalty of $500 on retail dealers and $1,000 on manufacturers. The payment of such tax or penalty shall give no right to engage in the manufacture or sale of such liquor, or relieve anyone from criminal liability, nor shall this Act relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws.

" The commissioner, with the approval of the Secretary of the Treasury, may compromise any civil cause arising under this title before bringing action in court; and with the approval of the Attorney General he may compromise any such cause after action thereon has been commenced."

The mere use of the word " tax " in an act primarily designed to define and suppress crime is not enough to show that within the true intendment of the term a tax was laid. *Child Labor Tax Case, ante,* 20. When by its

very nature the imposition is a penalty, it must be so regarded. *Helwig* v. *United States,* 188 U. S. 605, 613. Evidence of crime (§ 29) is essential to assessment under § 35. It lacks all the ordinary characteristics of a tax, whose primary function " is to provide for the support of the government " and clearly involves the idea of punishment for infraction of the law—the definite function of a penalty. *O'Sullivan* v. *Felix,* 233 U. S. 318, 324.

The Collector demanded payment of a penalty and § 3224, which prohibits suits to restrain assessment or collection of any tax, is without application. And the same is true as to statutes granting the right to sue for taxes paid under protest. A revenue officer without notice has undertaken to assess a penalty for an alleged criminal act and threatens to enforce payment by seizure and sale of property without opportunity for a hearing of any kind.

Section 35 prescribes no definite mode for enforcing the imposition which it directs, and, if it be interpreted as above stated, we do not understand counsel for the United States claim that relief should be denied to the appellant. Before collection of taxes levied by statutes enacted in plain pursuance of the taxing power can be enforced, the taxpayer must be given fair opportunity for hearing— this is essential to due process of law. *Central of Georgia Ry. Co.* v. *Wright,* 207 U. S. 127, 136, 138, 142. And certainly we cannot conclude, in the absence of language admitting of no other construction, that Congress intended that penalties for crime should be enforced through the secret findings and summary action of executive officers. The guarantees of due process of law and trial by jury are not to be forgotten or disregarded. See *Fontenot* v. *Accardo,* 278 Fed. 871. A preliminary injunction should have been granted.

The decree of the court below must be reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE BRANDEIS, dissenting, with whom MR. JUSTICE PITNEY concurs.

The suit is in equity. So far as appears, the plaintiff had a full, adequate and complete remedy at law; and there was no danger of irreparable injury. The relief should, therefore, be denied, whatever the construction of § 35, Title II, of the Volstead Act, and even if it be deemed unconstitutional. Compare *Bailey* v. *George, ante,* 16.

Plaintiff describes himself as a retail liquor dealer in Philadelphia who had paid the federal special tax for the year ending June 30, 1920, and held a license under the Brooks Law which did not expire until May 31, 1921. On December 29, 1920, he was arrested under § 2, Title II, of the Volstead Act for illegally selling liquor; and the prosecution is still pending. On March 18, 1921, he received from the Collector of Internal Revenue a " Notice and Demand for Tax "; and on March 31, 1921, a second notice. By the latter he was informed that, if he did not pay the alleged tax within ten days, collection would be made by seizure and sale of his property. The amount demanded is $557.29, made up of three items: one for $45.83 for double tax under said § 35; another of $11.46 called penalty under § 3244 of the Revised Statutes; and a further amount of $500.00 " special penalty " under said § 35. This suit against the Collector was commenced May 25, 1921. The plaintiff says that there is in law no authority to levy this alleged tax and the penalties; that the claim is in fact not for a tax, but for fines; that the so-called " Notice and Demand for Tax " is in fact an attempt to inflict punishment without a hearing and without judicial trial; " and that he is wholly without adequate remedy at law to prevent such seizure of his property."

The claim is for a small sum. For aught that appears plaintiff might readily pay it under protest and bring an

action against the Collector to recover the amount paid. If he does not wish to pay, he can let the distraint be made and then sue for the trespass incident to wrongful distraint. And if personal property should be seized, he may replevy it. There is in the bill no allegation that the plaintiff is unable to pay the small amount claimed by the Government; nor of fraud or oppression or abuse of process on the part of the Collector; nor that a cloud will be cast upon title to real estate; nor that the property subject to distraint is of such a character that if distrained it will be sacrificed; nor that a proceeding in equity is necessary to prevent multiplicity of suits.

If the sum assessed against the plaintiff is a tax legally due, distraint by the Collector is a permissible and long sanctioned method of collection. Revised Statutes, §§ 3187–3216; *Hartman* v. *Bean,* 99 U. S. 393, 397; *Blacklock* v. *United States,* 208 U. S. 75. Compare *Scottish Union & National Insurance Co.* v. *Bowland,* 196 U. S. 611, 632. If it is in its nature a tax, but is claimed to be an unconstitutional one, still, particularly in view of Rev. Stats. § 3224, suit will not lie to restrain its collection. *Snyder* v. *Marks,* 109 U. S. 189; *Dodge* v. *Osborn,* 240 U. S. 118. And if the contention is that the Government's demand is not for a tax at all, but for a fine, and that, therefore, Congress lacks power to confer upon the Collector authority to collect it by distraint, still equity should not grant relief, because the bill fails to allege any fact showing that the legal remedy would not be adequate or that there is danger of irreparable injury.[1] Whether the Government's demand be deemed one for a fine or for a tax

---

[1] Compare *Dows* v. *Chicago,* 11 Wall. 108; *Shelton* v. *Platt,* 139 U. S. 591; *Pittsburgh, etc., Ry.* v. *Board of Public Works,* 172 U. S. 32; *Arkansas Building & Loan Association* v. *Madden,* 175 U. S. 269; *Indiana Manufacturing Co.* v. *Koehne,* 188 U. S. 681; *Boise Artesian Water Co.* v. *Boise City,* 213 U. S. 276; *Singer Sewing Machine Co.* v. *Benedict,* 229 U. S. 481.

which is unconstitutional, legal remedies are available; and there is, therefore, lack of jurisdiction in equity. We have here, at the worst, the case of a threatened distraint which it is contended will be wrongful if made; a case not differing in substance from wrongful distraint by landlords or other wrongful distraint by tax collectors; and not differing in substance from wrongful attachment. In all these cases, as has long been settled, the owner of the property of which seizure is threatened is not entitled to relief in equity, unless it appears that there, is no plain, adequate and complete remedy at law.

Whether the action of the Government is lawful depends upon the construction of a statute; and on this question the lower courts have differed. As was said by this court in *Arkansas Building & Loan Association* v. *Madden,* 175 U. S. 269, 274: " It is quite possible that in cases of this sort the validity of a law may be more conveniently tested, by the party denying it, by a bill in equity than by an action at law; but considerations of that character, while they may explain, do not justify, resort to that mode of proceeding." If the Government is proceeding without warrant in law, the plaintiff should, of course, have redress. An early determination of the constitutional question presented would be desirable. But, in my opinion, we cannot properly decide it in this case.